**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | **CRIMINAL NO. W-10-CR-297 (4)** |
| | § | |
| **RAYMOND ANTHONY LOPEZ,** | § | |
| *Defendant.* | § | |

**EMERGENCY MOTION FOR COMPASSIONATE RELEASE**
**PURSUANT TO 18 U.S.C. § 3582**

Came on for consideration this date, the Motion of Raymond Anthony Lopez filed pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Lopez is an inmate at the Lompoc Federal Correctional Complex ("FCC") in Lompoc, California. He is currently serving a sentence of 136 months of incarceration. He requests that the Court reduce this to "time served" and order home confinement during his three-year term of supervised release. The most current pleading the Court has is dated June 11, 2020, and is a supplement filed by Lopez.

As amended by the First Step Act, the compassionate release statute allows courts to reduce sentences for "extraordinary and compelling" reasons. The COVID-19 pandemic, which some public health experts, policymakers, and many courts around the country recognize as especially dangerous in the confines of correctional institutions, is an "extraordinary and compelling circumstance." Mr. Lopez's prior request for compassionate release was denied by the Acting Complex Warden at FCC Lompoc on April 14, 2020. Therefore, he has satisfied the exhaustion requirement and this motion is ripe for the Court's review.

On a date no later than May 7, 2020, Mr. Lopez exhibited the virus's symptoms and tested positive for Covid-19 (after having reported to sick call on May 3, 2020). As of May 7, 2020, that medical record reflects that he was to be transported from USP Lompoc to a local

hospital emergency room as, given his "COVID-19 known positive with signs of worsening disease, suspected pneumonitis, and underlying Type 1 Diabetes Mellitus ("DM")" with "episodic desaturations." Additionally, Lopez has also brought to the attention of the Court that an inmate named Adrian Solarzano died at FCI Terminal Island. It is unclear to the Court whether the Coronavirus was the cause of the death of Solarzano.

The Court finds that Defendant has not met his burden of establishing that a sentence reduction under the statute is warranted. The Court, therefore, **DENIES** the Motion with Prejudice. To the extent Defendant requests in the alternative, that Bureau of Prisons ("BOP") place him on home confinement or furlough him, this Court also **DENIES** those alternative requests.

## I.    Factual Background

In 2011, a jury returned a guilty verdict of the Defendant of conspiring to possess with intent to distribute at least 500 grams of methamphetamine. ECF No. 321 at 2. This Court sentenced him to 136 months of imprisonment. *Id*. Defendant has served 122 months of that sentence. ECF No. 381 at 1. Lopez is currently fifty-five years old inmate at FCC Lompoc, with a scheduled release date of August 06, 2021.[1]

It is informative in resolving the present motion that this Court has denied two prior post-conviction motion, *See* ECF No. 340, 351. In 2014 the Defendant moved to reduce his sentence pursuant to the retroactively applicable guideline amendment 782. *See* ECF No. 340. Additionally, in 2015, the Defendant filed a motion to vacate his conviction pursuant to 28 U.S.C. §b2255. ECF No. 344. This Court also denied that motion. ECF No. 366. In denying the

---

[1] The Court accessed this information by searching for Palmer on the Bureau of Prisons' Inmate Locator, available at https://www.bop.gov/inmateloc/.

prior motions, this Court explained that "[c]onsidering the factors contained in § 3553,[2] Defendant's sentence is appropriate considering the seriousness of the crime committed and the danger to society if Defendant was released earlier." ECF No. 351. This Court also pointed out that "Defendant is a leader in a violent criminal street gang, which has been associated with the Mexican Mafia" and observed that the investigation leading to his arrest "was an off-shoot of law enforcement's investigation of the gang's involvement in several murders." *Id*. The Fifth Circuit affirmed this Court's ruling. *See United States v. Lopez*, 633 F. App'x 606 (5th Cir. 2016); ECF No. 365.

On April 4, 2020, the Defendant made a request to the Warden of his facility for compassionate release. This request was denied on April 13, 2020. He then administratively appealed this denial on April 30, 2020. *See* ECF No. 381–7, *Compassionate Release Review Denial*. That appeal was also denied. On May 14, 2020, Defendant filed a motion with this Court seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), for a sentence reduction resulting in his immediate release from BOP's custody, relying on the ground that he contracted COVID-19 while in prison and was hospitalized. ECF No. 379.

## II.    BOP's Response to Corona Pandemic

The BOP began planning for potential Coronavirus transmissions in January 2020. ECF No 381 at 1. The agency established a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control, including by reviewing guidance from the World Health Organization. *Id*. On March 13, 2020, the BOP began to modify its operations, in accordance with its Coronavirus (COVID-19) Action Plan ("Action Plan"), to minimize the risk of COVID-19 transmission into and inside its facilities. Since that time, as events require, the BOP has repeatedly revised the Action Plan to address the crisis. *Id*.

---

[2] *See* 18 U.S.C. § 3553(a)(1)–(7)

On March 26, 2020, the Attorney General directed the Director of the Bureau of Prisons, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. *Id*. That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, *see* 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g). *Id*. Congress has also acted to enhance the BOP's flexibility to respond to the pandemic. *Id*. Under the Coronavirus Aid, Relief, and Economic Security Act ("CARE Act"), enacted on March 27, 2020, the BOP may "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP. Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621 note).

On April 3, 2020, the Attorney General gave the Director of the BOP the authority to exercise this discretion, beginning at the facilities that have seen the highest incidence of Coronavirus transmission. *See* Exhibit 1, *Mem. for Director of Bureau of Prisons*. As of this filing, the BOP has transferred 4,521 inmates to home confinement, which is an increase of 158% since March 2020. *See* Federal Bureau of Prisons, *COVID-19 Home Confinement Information*, *at* https://www.bop.gov/coronavirus/ (last visited June 25, 2020).

### III.    Law and Analysis

Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain circumstances, grant a defendant's motion to reduce his or her term of imprisonment. After the statute's exhaustion requirement is met—as has occurred here—a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds,

as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a policy statement addressing the reduction of sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." USSG § 1B1.13.2.

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." USSG § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. USSG § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes that

the BOP has the discretion to identify other grounds that amount to "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(D).

The movant must establish both; 1) there is "extraordinary and compelling reason," and 2) that a reduction is warranted in light of the danger that he would pose to the community and the relevant § 3553(a) factors. As explained below, The Court denies Lopez's request to reduce his 136-month incarceration and order home confinement. Further, no constitutional or statutory authority allows the Court to direct the BOP to place the Defendant in home confinement.

## A.  Compassionate release pursuant to 18 U.S.C. § 3582

For this Court to determine that it should grant a sentence reduction, it must determine that the defendant "is not a danger to the safety of any other person or the community." USSG § 1B1.13(2). This Court finds that the Defendant has failed to accomplish this requirement. This Court could deny a sentence reduction on that basis alone. Such a ruling would be consistent with its decision when Defendant previously sought to have his sentence reduced. The Court found then that the Defendant's current sentence "is appropriate considering the seriousness of the crime committed and the danger to society if the Defendant were released earlier." ECF No. 351. This was properly based, in part, on the fact that Defendant's gang associations stretch back to his adolescence, *see, e.g.*, PSR ¶ 96, and ultimately led to him occupying a position of authority in one gang that distributed drugs (Gardena 13) and having links to another (Mexican Mafia), *Id.* ¶¶ 6, 8. While serving as a leader in that criminal enterprise, Defendant "dictate[d]" the distribution of money earned from narcotics trafficking and conducted gang meetings at his restaurant. *Id.* ¶¶ 8, 107. The Defendant's offenses of conviction were not isolated; his criminal history is lengthy and includes multiple instances of physical conflicts with law enforcement officers. *Id.* ¶¶ 76-80.

The Court acknowledges that COVID-19 is an extremely dangerous illness that has quickly resulted in massive disruption to our society and economy. While the Defendant is confined in a facility and restricted, the BOP is taking extraordinary steps to protect the safety and health of both prisoners and staff. The Defendant has not shown to have the "extraordinary and compelling reasons" that would be consistent to USSG § 1B1.13.2.

**B. Defendant has not established that this Court has the authority to grant his Alternative Request for Home Confinement or Furlough.**

Defendant also mentions placement on home confinement and asks that this Court "consider writing a letter to the Warden recommending a furlough for Mr. Lopez until after the COVID-19 situation has been resolved at [FCI] Lompoc." Def. Mot. at 1, n.2. This Court, however, has no authority to direct the BOP to place a defendant in home confinement or to furlough an inmate. Instead, those decisions are committed solely to the BOP's discretion. Moreover, no constitutional or statutory authority that allows the Court to order home confinement. A prisoner has no constitutional right to confinement in any particular place, including in-home confinement. *See Sandin v. Conner*, 515 U.S. 472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons."). Following the imposition of sentence, the Court has limited jurisdiction to correct or modify that sentence absent specific circumstances enumerated by Congress in 18 U.S.C. § 3582. *United States v. Garcia*, 606 F.3d 209, 212 n.5 (5th Cir. 2010) (per curiam). Section 3582(c) contemplates only a reduction in sentence. *See* § 3582(c). But Defendant's request to serve the rest of his term in home confinement, as opposed to prison, works no reduction to his sentence. Home confinement merely permits the inmate to serve out his term of imprisonment at

home. Any request for such relief, therefore, falls outside § 3582(c)'s limited grant of authority to this Court to modify a sentence post-conviction.

Similarly, whether to furlough an inmate is an issue reserved to the BOP's discretion. Under 18 U.S.C. § 3622, "[t]he Bureau of Prisons may release a prisoner from the place of his imprisonment for a limited period" under specific, statutorily enumerated conditions. As multiple courts have recognized even in the context of COVID-19, however, "such determinations are solely the province of the BOP." *United States v. Glass*, 2020 WL 2404889, at *3 (W.D. Va. May 12, 2020); *accord United States v. Hiller*, 2020 WL 2041673, at *4 (D. Md. Apr. 28, 2020); *United States v. Riddiough*, 2020 WL 1896678, at *1 (D. Nev. Apr. 16, 2020).

Given that this Court has determined that it does not have the jurisdictional authority to grant the alternative request, the Court declines to state whether it would have granted the request were it within this Court's discretion to do so.

## IV.   CONCLUSION

The Defendant's motion does not demonstrate extraordinary and compelling reasons for compassionate release. Further, Defendant offers no statutory authority that could support an order placing him on home confinement or furloughing him. Therefore, this Court **DENIES** the Defendant's Motion and alternative request (ECF No. 379).

**SIGNED** this 26th day of June, 2020.


ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE